UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RODNEY LEWIS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:21 CV 544 ACL |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

**<u>MEMORANDUM</u>**

Plaintiff Rodney Lewis brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Lewis' severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I. Procedural History**

Lewis filed his applications for DIB and SSI on March 8, 2019 and January 31, 2019,

respectively. (Tr. 259-70.) He claimed he became unable to work on November 15, 2018, due to lymphedema, depression, anxiety, and high blood pressure. (Tr. 304, 309.) Lewis was 44 years of age at his alleged onset of disability date. His applications were denied initially. (Tr. 61, 83.) Lewis' claims were denied by an ALJ on January 12, 2021. (Tr. 9-17.) On March 10, 2021, the Appeals Council denied Lewis' claim for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Lewis raises the following arguments: (1) "the decision lacks a proper evaluation of Plaintiff's pain and/or subjective reports of symptoms;" (2) "the RFC is not supported by substantial evidence;" and (3) "opinion evidence is not properly evaluated." (Doc. 24 at 3, 7, 9.)

## II. The ALJ's Determination

The ALJ first found that Lewis met the insured status requirements of the Social Security Act through December 31, 2023. (Tr. 11.) He stated that Lewis has not engaged in substantial gainful activity since his alleged onset of disability date. *Id.* In addition, the ALJ concluded that Lewis had the following severe impairments: hypertension, lymphedema, and obesity. *Id.* The ALJ found that Lewis did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 12.)

As to Lewis' RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that he is able to lift 10 pounds frequently and five pounds occasionally. The claimant is able to stand and/or walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday. The claimant cannot climb and he can occasionally balance and stoop. The claimant cannot perform

>kneeling, crouching, or crawling. The claimant can frequently handle and finger. The claimant would need to avoid workplace hazards, such as dangerous machinery or unprotected heights.

(Tr. 13.)

The ALJ found that Lewis was unable to perform his past relevant work as a general superintendent for ironworkers, but was capable of performing other work existing in significant numbers in the national economy, such as order clerk, document preparer, and service rater. (Tr. 15-16.) The ALJ therefore concluded that Lewis was not under a disability, as defined in the Social Security Act, from November 15, 2018, through the date of the decision. (Tr. 17.)

The ALJ's final decision reads as follows:

>Based on the application for a period of disability and disability insurance benefits protectively filed on March 8, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
>Based on the application for supplemental security income protectively field on January 31, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 17.)

### III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

As previously noted, Lewis raises three claims. The undersigned will discuss them in turn, beginning with the ALJ's evaluation of Lewis' subjective complaints.

**1. Subjective Complaints**

Lewis first argues that the ALJ's evaluation of his subjective complaints was deficient. Specifically, he claims that the ALJ improperly discredited his allegations regarding his leg pain and swelling.

When determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints.[1] *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In doing so, the ALJ must consider the claimant's prior work record and third-party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is not mechanically obligated to discuss each of the above factors, however, when rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his or her reasons for discrediting the testimony, and the ALJ's credibility assessment must be based on substantial evidence. *Vick v. Saul*, No. 1:19 CV 232

---

[1]Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d 991, 1008 (E.D. Mo. 2009)).  On review by the court, "[c]redibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).  The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility."  *Id.*

The ALJ summarized Lewis' testimony regarding his limitations as follows, in relevant part:

> The claimant alleged at the hearing that he is unable to work due to chronic leg pain and swelling.  The claimant alleged that he must take breaks to lie down and to elevate his legs during the day.  The claimant reported that he would need to lie down for two to three hours if he were to stand for 90 minutes at one time.  The claimant alleged that he has difficulty using his hands and bending over to put on shoes due to swelling in his extremities.  The claimant explained that wearing compression hose does little to relieve his symptoms.

(Tr. 13-14.)

The ALJ determined that, although Lewis' medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id.*  The Court finds that the ALJ appropriately considered Lewis' subjective allegations.

The ALJ first discussed the objective medical evidence and found it was not supportive of Lewis' subjective complaints.[2]  A summary of the medical evidence discussed by the ALJ is provided below:

---

[2]The undersigned notes that, although Lewis alleged mental impairments in addition to his physical impairments, he does not challenge the ALJ's finding that his mental impairments were non-severe.  As such, the Court's discussion will focus on Lewis' physical impairments.

On February 28, 2019, Lewis presented to Matthew Tiefenbrunn, M.D., for his annual physical. (Tr. 14, 367.) Lewis complained of leg swelling, pain, and discoloration for the past nine years, which had been getting worse recently, causing him to quit his job as an iron worker. (Tr. 367.) He had been diagnosed with lymphedema. *Id.* On examination, Lewis was noted to be morbidly obese, weighing 321 pounds; his coordination and gait were normal; he had full strength and intact sensation; he had significant lymphedema and varicose veins below the knee of the right lower extremity; and mild edema of the left lower extremity. (Tr. 368.) Dr. Tiefenbrunn diagnosed Lewis with lymphedema and elevated blood pressure. (Tr. 369.) For his lymphedema, Dr. Tiefenbrunn prescribed a diuretic, and recommended that Lewis apply a topical ointment to the right lower extremity multiple times per day, wear compression stockings, engage in ambulatory activity, and increase his water intake. *Id.* He prescribed blood pressure medication and a beta blocker, and recommended a healthy diet and routine cardiovascular activity. (Tr. 368-69.) Dr. Tiefenbrunn also completed a form indicating Lewis was "occupationally disabled" from ironworking since May 17, 2017. (Tr. 361.) Lewis returned for follow-up regarding his hypertension on March 14, 2019, at which time he reported feeling improved on the medication. (Tr. 14, 365.) He had lost some weight with dietary changes. *Id.* Dr. Tiefenbrunn diagnosed him with improved hypertension. (Tr. 366.) He continued Lewis' medications and instructed him to continue his diet and routine cardiovascular activity. *Id.*

On May 11, 2019, Lewis presented to Raymond Leung, M.D., for a consultative internist examination at the request of the state agency. (Tr. 14, 380.) Lewis reported that he was able to walk one block and lift ten pounds. (Tr. 380.) On examination, Lewis' blood pressure was high at 142/110. Lewis became irritable when Dr. Leung told him he had signs of varicose

veins and venous stasis to his legs, insisting that he had lymphedema.  (Tr. 381.)  Dr. Lewis noted swelling and hyperpigmentation to the right lower leg.  (Tr. 382.)  Lewis walked with a moderate limp, but was able to walk fifty feet unassisted, tandem walk, hop on his left leg, heel walk, toe walk, squat, and get on and off the exam table without difficulty.  *Id.*  He had full range of motion of all joints, no muscle atrophy, full grip strength, normal sensation and reflexes, no lower extremity peripheral edema, and good distal pulses bilaterally.  *Id.*  Dr. Leung diagnosed Lewis with hypertension and lymphedema.  *Id.*

The record reveals Lewis was incarcerated on May 23, 2019, and remained incarcerated through the date of his December 2020 administrative hearing.  (Tr. 407, 37.)  During a September 17, 2020 clinic visit for hypertension, Lewis reported he had lower extremity lymphedema, but no pain.  (Tr. 426.)  On examination, Lewis had swelling and tenderness in his legs, but he had normal reflexes, appropriate muscle tone, good coordination, and a normal gait.  (Tr. 427.)  Lewis was assessed with unspecified edema and hypertension, and was prescribed medications for his hypertension.  (Tr. 428.)  On September 21, 2020, Lewis had a normal gait and no edema of the lower extremities.  (Tr. 448, 452.)  A compression garment was ordered for Lewis' right leg.  (Tr. 453-54.)  On October 22, 2020, Lewis presented with complaints of lymphedema of his right leg, with scaly and itchy skin.  (Tr. 507.)  On examination, Lewis was noted to have scaling skin, non-pitting edema, tenderness, and hyperpigmentation.  *Id.*  He was assessed with chronic lymphedema on the right more than left leg, and was prescribed custom hosiery for the right leg.  *Id.*

The ALJ stated that Lewis has not received extensive medical treatment during the relevant period.  (Tr. 14.)  The medical evidence summarized above supports the ALJ's finding that Lewis received minimal and conservative treatment for his impairments.  A claimant's

"failure to seek treatment" is not dispositive, though it certainly "may indicate the relative seriousness of a medical problem." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995); *see also Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding conservative treatment weighs against credibility); *Vanlue v. Astrue*, 4:11-cv-595-TIA, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (finding minimal and conservative mental health treatment weigh against a finding of disability).

The ALJ also noted that the medical evidence supports that Lewis' hypertension and lymphedema can be controlled with treatment.  (Tr. 14.)  For example, Lewis reported to Dr. Tiefenbrunn that he felt improved on medication at his March 14, 2019 follow-up.  (Tr. 14, 365.)  Dr. Tiefenbrunn diagnosed him with "improved hypertension" at that time.  (Tr. 366.) The ALJ properly considered this when assessing Lewis' subjective complaints.  *See Julin*, 826 F.3d at 1087 (evidence of relief from medication supports ALJ's findings that complaints were not fully credible); *Renstrom*, 680 F.3d at 1066 (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability").

The ALJ found that the objective findings on examination were not consistent with Lewis' allegations of significant physical limitations.  (Tr. 14.)  The treatment notes reveal that, despite the swelling and pain from Lewis' lymphedema, he consistently had full strength, intact sensation, good reflexes, and good coordination.  (Tr. 368, 382, 427.)  Moreover, Lewis' legs were not always found to be swollen (Tr. 452), and his gait was found to be normal on multiple examinations (Tr. 368, 427, 448.)  The ALJ properly considered these findings when considering the credibility of Lewis' allegations.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (explaining lack of objective medical evidence to support a claimant's complaints is

relevant in assessing credibility); *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (holding the ALJ may find a claimant's subjective pain complaints not credible in light of objective medical evidence to the contrary).

Lewis argues that the ALJ erred in failing to credit his testimony that he must elevate his legs continually throughout the day for periods of an hour or longer to alleviate the swelling.  In support of this allegation, he cites to his own testimony and to various online medical sources that suggest elevating the legs "may help excessive fluid drain away more effectively."  (Doc. 24 at 5.)   Lewis admits, however, that "there is no specific statement by any doctors that plaintiff must elevate his legs."  *Id.*   The ALJ addressed Lewis' testimony regarding his need to lie down and elevate his legs throughout the day, but found that the objective medical record "contains no findings or medical opinion to support" this need.  (Tr. 15.)

"ALJs may discount claimants' complaints if there are inconsistencies in the record as a whole, and '[courts] will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'"  *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)); *see also Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) ("An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'") (quoting *Julin*, 826 F.3d at 1086).

Here, the ALJ properly considered Lewis' subjective complaints in light of the *Polaski* factors.   The ALJ acknowledged that Lewis suffers from swelling and pain in his legs due to his impairments, but found that there was no medical evidence supporting a need to elevate his legs for most of the day.   Additionally, Lewis' institutional records reveal he had no such work or housing restrictions during his incarceration.  (Tr. 466-68, 517.)   It was Lewis' responsibility to

establish such a medical restriction was required. *See Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) ("It is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC."). This requires medical evidence, not just claimant's subjective allegations. 20 C.F.R. §§ 416.908, 416.912(c), 416.928(a).

In summary, the ALJ explicitly stated that he discounted Lewis' credibility with regard to his alleged restrictions and provided good cause for doing so. Thus, this Court must defer to the ALJ's finding. This Court may not reverse an ALJ even if it believed there was some evidence that would support an opposite conclusion about Lewis' credibility. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (holding that a court may not reverse an ALJ's decision simply because some evidence would support an opposite conclusion).

**2. Opinion Evidence and RFC**

Lewis next argues that the ALJ erred in determining his RFC. Specifically, he contends that the ALJ improperly relied on the opinion of state agency medical consultant Donna McCall, D.O., as well as the ALJ's own inferences. He also contends that the ALJ erred in evaluating the opinion of Dr. McCall.

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). "The determination of a claimant's RFC during an administrative hearing

is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ found that Lewis had the RFC to perform sedentary work, with the following additional limitations: he cannot climb and he can occasionally balance and stoop; cannot perform kneeling, crouching, or crawling; can frequently handle and finger; and must avoid workplace hazards, such as dangerous machinery or unprotected heights.  (Tr. 62.)  In making this determination, the ALJ assessed the consistency of Lewis' subjective complaints with the record as discussed above.  The ALJ also evaluated the medical opinion evidence.

A "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  Under the revised Social Security regulations,[3] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).  Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors,

---

[3]The new regulations are applicable to Lewis' claims because he filed his appeal after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

including the source's familiarity with the Social Security guidelines.  *See* 20 C.F.R. § 404.1520c.  The ALJ must explain how he considered the factors of supportability and consistency in his decisions but are not statutorily required to discuss the other factors.  20 C.F.R. § 404.1520c(b)(2).

State agency medical consultant Dr. McCall completed a Physical Residual Functional Capacity Assessment on June 3, 2019.  (Tr. 55-58.)  Dr. McCall found that Lewis could lift ten pounds occasionally and frequently, stand for a total of two hours, and sit a total of six hours in an eight-hour workday; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, and balance; could frequently stoop and crawl; and should avoid concentrated exposure to vibration and hazards.  (Tr. 55-57.)  He explained that these limitations would "prevent symptom exacerbation and possible injury."  (Tr. 58.)

The ALJ found Dr. McCall's opinion "persuasive," noting that it was "supported with a good explanation and citations to the objective medical evidence."  (Tr. 15.)  The ALJ further explained that Dr. McCall's opinion was "consistent with the physical examination findings of swelling in the claimant's lower extremities due to lymphedema, such that the claimant would reasonably have difficulty ambulating and would be capable of performing sedentary work."  *Id.*

Dr. McCall reviewed and summarized the medical records from Lewis' treatment with Dr. Tiefenbrunn and his consultative examination with Dr. Leung.  (Tr. 57.)  She also discussed Lewis' statements regarding his daily activities and limitations.  (Tr. 58.)  For example, Dr. McCall noted that Lewis reported difficulty getting up and down, lifting, and walking; and that he was unable to vacuum, sweep, mop, or do yard work due to his leg pain; but reported that he was able to cook easy meals, do the dishes, do laundry, drive short distances, attend his sons' sporting events, shop in stores once a week, and sit as long as he is able to shift positions.  *Id.*

The medical and other evidence cited by Dr. McCall support her opinion that Lewis is capable of performing a limited range of sedentary work.

The undersigned finds that the ALJ conducted a proper evaluation of Dr. McCall's opinion.  Dr. McCall, as a state agency medical consultant, is an expert qualified to provide opinions on a claimant's functional limitations based on a review of the record.  *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (2017) (noting that state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation).  The ALJ found that Dr. McCall's opinion was both supported by her own report and consistent with the record.  As such, the ALJ complied with the regulations requiring that the ALJ make findings regarding the supportability and consistency of prior administrative medical findings.

Further, the ALJ did not rely solely on Dr. McCall's opinion when determining Lewis' RFC.  Instead, the ALJ indicated that he considered all of the medical and non-medical evidence of record when making his determination.  (Tr. 15.)  The RFC formulated by the ALJ is actually *more restrictive* than that of Dr. McCall.  To the extent Lewis suggests that his RFC should have been determined or confirmed by a medical source, Lewis is mistaken.  As stated above, it is the ALJ's role to evaluate the record in its entirety, including medical opinions and testimony, and formulate a claimant's RFC based on all the relevant, credible evidence of record. *See Perks*, 687 F.3d at 1092.

The ALJ's RFC determination that Lewis remains capable of performing a limited range of sedentary work is supported by the record as a whole.  It is consistent with the opinion of the state agency medical consultant, as well as the treatment notes of Lewis' various providers, which document few abnormalities other than lower extremity swelling.  Lewis appears to take issue only with the ALJ's failure to find a need to elevate his legs throughout the work day.  The

record, however, reveals that no physician ever found that Lewis was required to elevate his legs at all, much less most of the day as Lewis alleges.  Notably, Dr. Tiefenbrunn "reinforced ambulatory activity" on February 28, 2019—approximately three months after Lewis' alleged onset of disability—despite finding "significant lymphedema" of the right lower extremity on examination.  (Tr. 369.)  Other than being restricted to the lower bunk in his cell (Tr. 517), no work or housing restrictions were imposed due to Lewis' lymphedema during his incarceration.  The ALJ adequately incorporated Lewis' difficulties with ambulation resulting from his lymphedema and obesity in limiting him to only a reduced range of sedentary work.  Lewis has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of September, 2022.